GERALD WILLIAMS V. THE STATE.

No. 20853. Delivered February 21, 1940.
Rehearing Granted April 24, 1940.

The opinion states the case.

*J. C. Darroch* and *E. M. Davis,* both of Brownwood, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.
Appellant was convicted for possessing whisky in a dry area for the purpose of sale and assessed a fine of $100.00 by the County Court of Brown County.

Officers went to the appellant's private residence to make a search for intoxicating liquors. As they approached, a young

man who roomed at the place saw them coming and went into the house and locked the screen door, which delayed the officers in entering. As they approached the house they heard glass breaking, and upon forcing an entrance by battering the bath-room door down with a sledge hammer, they found appellant in the bath room with some broken whisky bottles.

Tom Warren, representing the Texas Liquor Control Board, testified that he went into the house of the appellant after approaching the place from the back and found not only the screen door fastened in front of him, but appellant had gone into the bath room and barred the door. They demanded that the door be unlocked but that it seems was not done. The witness then said:

"When we got in there he was pouring ammonia on that glass. We got glass out of a concrete basin about eighteen inches square and about 12 inches deep. There is about a ten-inch drain pipe with an iron sifter over it. We had to wait for the odor of ammonia to die down before we could pick up the glass. We picked up nine whisky bottle necks that the seal had not been broken and a number of others that had been broken and when the fumes of ammonia died down there was still the odor of whisky there. In this basin there was a long iron tamping outfit with the glass. It was wet and standing on the glass in this basin. This was in the bath room."

The witness further testified: "When we found this tamping rod it was wet up to—I would say about eight inches. I had occasion to pick up this rod there and it smelled of whisky. In my duties as an employee of the Texas Liquor Control Board, I am able to tell the odor of whisky. It had a strong ammonia odor and also whisky. However, ammonia will die down quicker than whisky, but it still smelled a little of ammonia, and strong of whisky. It had the odor of whisky on it. I looked at the glass and things we got there. We secured parts of bottle necks and parts of labels on them, whisky labels."

Referring to the sack containing the bottles and also the necks, the witness said that he got the glass out of the concrete basin in the floor of the bath room; that it had a strong odor of whisky. He waited for a few minutes until the ammonia fumes died down and picked the glass up. He could tell the number of bottles they had by the number of bottle necks. He judged that those which had the seal unbroken were full of whisky.

The State introduced each of the eleven bottle necks in

evidence as Exhibits Nos. 1 to 11, and the testimony is to the effect that nine of these did not have the seals broken and that two of them did. The evidence shows that as to most of them, they were half-pint or pint bottles, no less than one-half. However, Exhibits Nos. 9 and 10, according to the testimony, were necks of pint bottles from which the caps had not been broken.

As we view it, two of the bottles contained a pint each and seven contained at least one-half pint; that is, they were bottles of that size with unbroken seals. The basin in the bathroom floor was eighteen inches square and had a ten-inch drainage. The tamping rod used to break the bottles was wet for approximately eight inches, and the odor shows that they had both whisky and ammonia. The jury had before it the fact that the appellant barred the door against the officers and that he broke these bottles while they were trying to effect an entrance. He was still engaged in pouring ammonia on the broken bottles when the officers succeeded in entering the bath room. There is a failure, as complained, to show definitely and certainly, except by circumstances, the amount of whisky which the appellant possessed, but we think the jury was justified under the facts in finding that there was more than a quart. The officers testified that one pint could not have made all that smell; that two pints would smell stronger than one; that "by the gauge of my nose I would say there was about ten or twelve pints in there—by the gauge of my nose." This was his conclusion, which he gave without objection. The constable of the precinct gave similar testimony to the foregoing in corroboration of the principal witness, and we find no fact testified to by any witness, nor is there a circumstance in the case indicating that the liquid which the bottles contained, that which appellant was destroying, was anything other than intoxicating liquor. The appellant's wife was the only witness in his behalf. She was in the house at the time the search was made and evidently knew the facts. She corroborates the officers in the statement that Thomas Atkinson was at the house at the time the search took place and that they gave the search warrant to him as they entered. There is nothing in her testimony to aid the appellant or in any way to discredit the testimony given by the officers either as to the facts existing or their conclusion from the facts as to the contents of the bottles.

The case of Ballew v. State, 121 S. W. (2d) 369, is very similar under the material facts. However, in that case the officers found only about three-fourths of a pint of whisky and a half pint of gin. They found a case of broken whisky

bottles in the bath room, some of which had been broken in the bath tub. From them they recovered about-one third of the liquid which, under analysis, showed to contain less than twenty per cent alcohol by volume. It was also shown that whisky has an alcoholic content of from forty to fifty per cent by volume. The evidence in that case was circumstantial, but the fact that part of the liquid in the bottles contained so small an amount of alcohol was sufficient to raise a question as to whether or not the liquid in the bottles was intoxicating. In that case the evidence, being circumstantial, was not sufficient to exclude any other reasonable conclusion than the appellant's guilt. In the instant case it is different. His act in breaking the bottles while the officers were approaching and then attempting to destroy the odor of liquor by the application of ammonia is an act of guilt which the jury had a right to consider. There is nothing in the case before us which in any respect might indicate anything other than that the appellant was guilty as charged. The affirmative evidence, unexplained, is sufficient. We believe it would be going too far under the facts of this case to say that the circumstances were insufficient upon which the jury may find the appellant guilty.

The question raised as to the sufficiency of the evidence was the only one which we consider of sufficient importance to require attention.

The other bills are overruled, and the case is affirmed.

### ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

In his motion for rehearing appellant calls attention to the testimony of the witness, Tom Warren, who made the affidavit for the search warrant in this case and who said: "I am one of the affiants in the Affidavit for Search Warrant. No sir, I never had seen any liquor manufactured in this particular house (referring to defendant's residence); I had never seen any liquor sold there. This defendant has never sold me any liquor. Yes, I knew it was a private residence. This affidavit I made was made on information and belief, instead of what I actually knew of my own knowledge. I have not seen any liquor in the possession of the defendant."

Following the foregoing testimony the prosecution asked the witness to tell the jury how he knew that liquor was being sold there, to which he answered, over objection of the appel-

lant, as follows: "Previous raids is all that I know. I have made previous raids there."

The admission of this evidence was error requiring that the case be reversed. Jackson v. State, 97 Tex. Cr. R. 462, 262 S. W. 78; Brunello v. State, 102 Tex. Cr. R. 379, 278 S. W. 428.

It is further insisted by the appellant on his motion for re-hearing that the foregoing evidence renders the affidavit for the search warrant insufficient. Had the affidavit contained this language of the witness, it might be a different proposition, but an examination of the affidavit indicates a sufficient positive allegation to authorize the issuance of the search warrant. This cannot be impeached by the subsequent evidence of the affiant making it. The Justice of the Peace who issued the search warrant based it upon the allegations in the affidavit and not the testimony which the witness gave on cross-examination subsequently. We find no error in this bill.

Because of the admission of the evidence of the witness as to the previous raids, the motion for rehearing is granted and the judgment of the trial court is reversed and remanded for a new trial.